**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————————

TANISHA SANDERS,

    Plaintiff - Appellant,

v.

TC TRANSCONTINENTAL TULSA,

    Defendant - Appellee.

FILED
United States Court of Appeals
Tenth Circuit

May 7, 2026

Christopher M. Wolpert
Clerk of Court

No. 25-5022
(D.C. No. 4:23-CV-00345-GAG-JFJ)
(N.D. Okla.)

———————————————————————

**ORDER AND JUDGMENT**[*]

———————————————————————

Before **HARTZ**, **EID**, and **ROSSMAN**, Circuit Judges.

———————————————————————

Tanisha Sanders, proceeding pro se,[1] appeals the district court's grant of

summary judgment to TC Transcontinental Tulsa, her former employer, in her civil

action alleging racial discrimination, a hostile work environment, and retaliation in

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Ms. Sanders proceeds pro se, we construe her arguments liberally, but we "cannot take on the responsibility of serving as [her] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), e-3(a).  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

TC Transcontinental hired Ms. Sanders as a supply chain manager in January 2022.  Her direct supervisor was Kelly Sivadon.  In August 2022, the company terminated Ms. Sanders's employment.  After exhausting her administrative remedies, Ms. Sanders sued TC Transcontinental in the Northern District of Oklahoma.

Ms. Sanders, a Black woman, alleged TC Transcontinental discriminated against her.  She claims she was terminated because of her race and her sex and in retaliation for her complaints related to two incidents with Ray Jestice, another TC Transcontinental employee who was her subordinate.  In one incident, in response to Ms. Sanders's discussing preferred lunch options with her team, Mr. Jestice suggested Evelyn's Restaurant, a soul food establishment.  In the other, Mr. Jestice showed photographs to another co-worker of female bodybuilders wearing bathing suits.  Ms. Sanders also asserted, based on these two incidents, that TC Transcontinental created a hostile work environment.

TC Transcontinental moved for summary judgment.  The company included in its motion a list of thirty-one "undisputed material facts" (UMF) in compliance with the district court's Local Civil Rule 56-1(b).  Ms. Sanders's response to the motion included her responses to nineteen of TC Transcontinental's UMF, appropriately identifying those statements she disputed.  But her response did not "*begin with* a

section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute," N.D. Okla. Local Civ. R. 56-1(c) (emphasis added). The response also included eight exhibits.

On reviewing the motion, the response, and each set of exhibits, the district court concluded Ms. Sanders did not comply with Local Rule 56-1, noting her statements in response to TC Transcontinental's UMF

> for the most part, lack any record citation. [Ms. Sanders] instead seeks to refute several of [TC Transcontinental's] statements of material fact by characterizing them as misleading and/or false. Moreover, these statements largely contain [Ms. Sanders's] own self-serving characterization of the record evidence. And [Ms. Sanders] has not presented any contrary evidence, such as a sworn statement.

R. at 152 (citations omitted). The court therefore "deem[ed] as admitted [TC Transcontinental's] thirty-one undisputed facts." *Id.*

The district court then considered those facts under the *McDonnell Douglas* framework for employment discrimination claims. That familiar standard "provide[s] a sensible, orderly way to evaluate the evidence that bears on the critical question of discrimination," *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 n.2 (2025). It consists of three steps:

> At the first step . . . the plaintiff bears the initial burden of establishing a prima facie case by producing enough evidence to support an inference of discriminatory motive. If the plaintiff clears that hurdle, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Finally, if the employer articulates such a justification, the plaintiff must then have a fair opportunity to show that the stated justification was in fact pretext for discrimination.

*Id.* at 308–09 (internal quotation marks, brackets, and citations omitted).  "A plaintiff may succeed under the *McDonnell Douglas* framework either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* at 309 (brackets omitted).

The court assumed without deciding Ms. Sanders had met her prima facie burden at step one but then concluded, at step two, TC Transcontinental had advanced a legitimate, nondiscriminatory reason for firing Ms. Sanders:  her inability "to work with others as a team."  *Id.* at 153.  TC Transcontinental submitted evidence in support of its reason, including Ms. Sivadon's sworn statement, Ms. Sanders's deposition testimony, and company records outlining Ms. Sanders's progress in the company's "Performance Excellence Process" (PEP).

In an effort to show that the reason offered by TC Transcontinental for her firing was pretextual, Ms. Sanders pointed to her termination letter.  But the district court concluded this letter did not create a genuine issue of material fact, stating, "[T]he Termination Letter . . . merely confirms [Ms. Sanders's] separation from employment at TC Transcontinental and highlights the benefits she is entitled to thereupon.  In addition, [Ms. Sanders's] own conclusory assertions and characterizations in her response to the Motion do not carry the day."  *Id.*
Ms. Sanders also argued her termination meant she was disciplined more severely than a White coworker, but the district court concluded she did not come forward with sufficient evidence to support that argument.

4

The district court also determined Ms. Sanders did not produce sufficient evidence to create a genuine issue of material fact on whether TC Transcontinental subjected her to a hostile work environment. The district court concluded that, even assuming the truth of Ms. Sanders's account, the two incidents involving Mr. Jestice did not rise to "the level of severity or pervasiveness required within [the Tenth] Circuit" to present the claim to a jury. *Id.* at 154 (citing *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–68 (10th Cir. 2012)).

Finally, the district court determined Ms. Sanders also could not move forward on her retaliation claim. Although she "alleges that she was retaliated against for having complained about 'tension' between her and a subordinate employee," the district court reasoned, Ms. Sanders's complaint did not constitute protected activity under Title VII. R. at 154.

The district court granted summary judgment to TC Transcontinental. This timely appeal followed.

## DISCUSSION

"We review the district court's grant of summary judgment de novo, applying the same legal standard that the district court is to apply." *New Hampshire Ins. Co. v. TSG Ski & Golf, LLC*, 128 F.4th 1337, 1344 (10th Cir. 2025). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a summary judgment movant makes a prima facie demonstration of the absence of a genuine issue of material fact, "the nonmovant . . . may not simply rest upon its

pleadings; the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "On appeal, we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023) (internal quotation marks and brackets omitted).

Ms. Sanders urges reversal, contending the district court made a number of errors in its grant of summary judgment. She argues the district court erred, *first*, by concluding she did not come forward with sufficient evidence of pretext to support her disparate treatment claim; *second*, by characterizing certain of her statements about the favorable treatment given to a White employee as conclusory and entitled to no weight; *third*, by concluding she had not presented evidence of workplace activity that was sufficiently severe and pervasive to create a hostile work environment; and *fourth*, by dismissing her retaliation claim.[2] We consider these arguments in turn and discern no error.

---

[2] In her reply brief, Ms. Sanders also argues the district court failed to construe her pro se submissions with sufficient liberality, going so far as to assert its analysis evidenced improper bias and partiality. *See* Reply Br. at 2–4. We need not consider this contention because "we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived." *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019). Even if we reached the issue, however, we see no basis in the record for Ms. Sanders's assertion that the district court did not appropriately account for her pro se status.

### 1. Evidence of pretext

We first consider Ms. Sanders's argument that she presented sufficient evidence to create a genuine issue of material fact on whether her termination was pretextual. "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (internal quotation marks omitted). TC Transcontinental supported its factual contention that its reasons for firing Ms. Sanders were legitimate and nondiscriminatory with the sworn statement of Ms. Sivadon. After outlining various complaints with Ms. Sanders's performance as a supply chain manager from January to August 2022, Ms. Sivadon stated, "In August 2022, after I failed to see improvement in her PEP, or any demonstrated ability to work collaboratively with coworkers, I decided to terminate her employment." R. at 85, ¶ 9.

In response to the motion, Ms. Sanders argued Ms. Sivadon's assessment of her performance was unfair—pointing, for instance, to the company's use of a Performance *Excellence Process* (PEP) for her to identify goals and work to meet them instead of a Performance *Improvement Plan* (PIP) designed to identify and correct deficiencies. But in determining whether an adverse employment action was pretextual, "[w]e do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118–19 (10th Cir. 2007).

7

Ms. Sanders presented no evidence from which a reasonable jury could conclude Ms. Sivadon did not actually believe Ms. Sanders had made inadequate progress in her PEP or failed to work sufficiently collaboratively. Ms. Sanders relies on her termination letter, but that letter did not state the reasons the company terminated her. We agree with the district court that the termination letter "merely confirms [Ms. Sanders's] separation from employment at TC Transcontinental and highlights the benefits she is entitled to thereupon." R. at 153. Ms. Sanders's subjective belief that such a letter should ordinarily contain the reasons for termination is not sufficient to carry her burden at this stage.

### 2.    Comparators

Ms. Sanders also argues the district court improperly discounted evidence she presented that she was treated less favorably than a White employee. Such evidence may, in some cases, be sufficient to establish pretext. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007) (describing the "differential treatment argument, in which the plaintiff demonstrates that the employer treated the plaintiff differently from other similarly-situated employees who violated work rules of comparable seriousness in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." (internal quotation marks and brackets omitted)). But "if the employer's differential treatment of similarly-situated employees is trivial or accidental or explained by a nondiscriminatory motive, such treatment is insufficient to create an inference of discrimination." *Id.* at 1168 (internal quotation marks omitted).

8

Here, Ms. Sanders points to evidence TC Transcontinental treated Mariah Lawson, a White employee Ms. Sanders argued was a comparator, more favorably than it treated her. "To assert a claim of disparate treatment, the plaintiff must show that [s]he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). But even assuming TC Transcontinental did put Ms. Lawson on a PIP, Ms. Sanders presented only her own testimony speculating about its reasons. And she did not produce any evidence as to whether Ms. Lawson completed her PIP or any other evidence about Ms. Lawson's prior disciplinary record. In short, there was too little in the record for Ms. Lawson's situation to forestall summary judgment. The district court could not, in this case, infer TC Transcontinental discriminated against Ms. Sanders by comparing her situation with Ms. Lawson's. So the district court appropriately rejected the use of Ms. Lawson as a comparator when it considered whether TC Transcontinental's reasons for firing Ms. Sanders were pretextual.

### 3.    Hostile work environment claim

We next consider Ms. Sanders's contention that the district court erred when it dismissed her hostile work environment claim. Recall, that claim was based on the two previously described incidents involving Mr. Jestice.

Reviewing de novo, and assuming the truth of Ms. Sanders's account of the incidents, there is insufficient evidence to establish a genuine issue of material fact as to whether TC Transcontinental created a hostile work environment. "An employer

9

creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hall v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 476 F.3d 847, 851 (10th Cir. 2007) (internal quotation marks omitted). "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim." *Morris*, 666 F.3d at 663–64 (internal quotation marks and citations omitted). We are sympathetic to Ms. Sanders's experience. But she has not satisfied the applicable legal standard for a hostile work environment claim, as the district court correctly determined.

### 4.     Retaliation claim

Finally, we affirm the district court's grant of summary judgment on Ms. Sanders's retaliation claim. But we do so on different grounds than the district court. *See United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) ("[A]ppellate courts have the discretion to affirm on any ground adequately supported by the record." (internal quotation marks omitted)).

The district court concluded Ms. Sanders did not present sufficient evidence that, before her termination, she engaged in protected activity. *See* R. at 154. But Title VII retaliation claims, like disparate treatment claims, also use the *McDonnell Douglas* burden-shifting framework. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). And we have affirmed the district court's

10

conclusion that no genuine issue of material fact existed as to TC Transcontinental's proffered legitimate, nondiscriminatory reasons for Ms. Sanders's termination—inadequate progress on her PEP and demonstrated inability to work collaboratively with coworkers.

So, even assuming Ms. Sanders could establish the activity she engaged in was protected from retaliation under Title VII—i.e., assuming her complaints to Ms. Sivadon about Mr. Jestice amounted to more than generic reports of "tension" in the workplace—summary judgment on her retaliation claim would be appropriate for the same reasons it was appropriate to her disparate treatment claim. That is, there is no genuine issue of material fact suggesting the legitimate reason TC Transcontinental gave for terminating Ms. Sanders was pretextual.

## CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Veronica S. Rossman
Circuit Judge